**FINEGOLD, ALEXANDER + ASSOCIATES, INC.,**
Appellee,

v.

**SETTY & ASSOCIATES, LTD., Appellant.**

No. 95–7161.

United States Court of Appeals, District of Columbia Circuit.

Argued March 15, 1996.

Decided April 12, 1996.

Rehearing Denied May 8, 1996.

*reprinted in* App. 40. These summary conclu-

Thomas R. Nedrich argued the cause and filed the briefs, Falls Church, VA, for appellant.

Frank J. Eisenhart argued the cause, Washington, DC, for appellee. With him on the brief was Julia J. Tyler.

Before: BUCKLEY, HENDERSON, and RANDOLPH, Circuit Judges.

RANDOLPH, Circuit Judge:

In February 1990, the predecessor firm of Finegold, Alexander + Associates, Inc., a Massachusetts corporation, contracted with the General Services Administration to provide architectural and engineering services for the renovation of the Veterans Administration Building in Washington, D.C. Eight months later, Setty & Associates, Ltd., a Virginia corporation, entered into a subcon-

sions are unsupported by substantial evidence.

tract with Finegold to provide mechanical and electrical designs for the project. During the course of the work, the government project officer requested several changes that required Setty to revise its designs. Setty submitted a certified claim in Finegold's name to GSA for additional compensation for the work required by these changes. GSA opposed the claim on the ground of "accord and satisfaction," arguing that Finegold had already agreed to the amount of increased compensation GSA would pay for the additional work. The Contracting Officer denied the claim, and Setty's administrative appeal, prosecuted in Finegold's name, was subsequently dismissed for lack of prosecution after Finegold refused to finance the litigation.

Setty then filed a demand for arbitration before the American Arbitration Association seeking damages from Finegold. In a series of twelve claims, Setty alleged that Finegold had violated the subcontract by failing to provide timely and accurate information, failing to present Setty's request for equitable adjustment to GSA, and failing to distribute to Setty an equitable share of the additional compensation it had received from GSA. After considering briefs submitted by the parties, the arbitrators appointed to hear the case concluded that the matter was arbitrable. Finegold filed suit in D.C. Superior Court to stay the arbitration proceedings. Setty removed the case to federal district court, alleging diversity of citizenship. On cross motions for summary judgment, the district court concluded that most of Setty's claims were not arbitrable. The court stayed three of Setty's claims in part and stayed the remaining claims in full. This appeal followed.

Article 4(a) of the subcontract permitted Finegold "at any time, unilaterally" to "make changes in the general scope of this Subcontract," in which case Setty was obligated to "perform the work as changed without delay." Under Article 4(c), Setty could submit to Finegold a proposal for equitable adjustment to reflect the additional costs imposed by such changes. Setty's additional compensation was limited to an "equitable share of any adjustment in [Finegold]'s Prime Con-

tract with GSA," and Setty had to submit its proposal "at least five (5) working days before [Finegold] [was] required to submit such proposal to GSA under the terms of the Prime Contract."

In the event of a dispute between Finegold and Setty "which involve[d] the Government or the terms of the Prime Contract," Article 9(a) of the subcontract provided that Setty was bound to Finegold to the same extent that Finegold was bound to GSA. On the other hand, under Article 9(c) "any dispute or any controversy between [Finegold] and [Setty] *not* involving the Government or the terms of the Prime Contract" had to be resolved through binding arbitration (emphasis in original); in the interim, before the dispute was resolved, the subcontractor was bound to follow the instructions of the prime contractor "without interruption, deficiency, or delay." The subcontract also permitted Setty to pursue claims against the government in Finegold's name so long as Finegold had "a reasonable opportunity to monitor and participate in any such claim or dispute."

The case turns on the meaning of Article 9(c). The district court thought the provision precluded arbitration of all claims that "require either an interpretation of the prime contract or an evaluation of the government's behavior for their resolution." We shall assume that this construction, which Finegold endorses, is plausible. Whether it should carry the day is another matter. Much depends on the generosity with which arbitration clauses must be judicially interpreted.

On this score, Setty directs us to the Supreme Court's decision in *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), holding that courts must compel arbitration unless there is "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 650, 106 S.Ct. at 1419. The Court was there quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). Both *AT & T Technologies* and *Warrior & Gulf* involved labor disputes; both were suits brought by unions to compel

arbitration; and both arose under § 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a). When the Court decided *Warrior & Gulf,* it perceived judicial "hostility" toward arbitration of commercial disagreements, echoing Judge Frank's lament in *Kulukundis Shipping Co. v. Amtorg Trading Corp.,* 126 F.2d 978, 985 (2d Cir. 1942). But labor disputes, the Court thought, were in a different category: in the commercial context, the alternative to arbitration was a lawsuit; in the labor context, the alternative was a strike or a lockout. *See Schneider Moving & Storage Co. v. Robbins,* 466 U.S. 364, 371, 104 S.Ct. 1844, 1848–49, 80 L.Ed.2d 366 (1984). When the Supreme Court's views toward commercial arbitration later shifted from "hostility" to endorsement (*see Rodriguez de Quijas v. Shearson/Am. Express, Inc.,* 490 U.S. 477, 480–81, 109 S.Ct. 1917, 1919–20, 104 L.Ed.2d 526 (1989)), the *Warrior & Gulf* distinction between labor arbitration and commercial arbitration began to fade from memory. And so, in recent years, it is scarcely surprising to find this court and others citing labor arbitration decisions such as *AT & T Technologies* in commercial arbitration cases.[1] Still, we must recognize that *Warrior & Gulf* and the cases following it formulated standards derived from § 301 and national labor policy, while the modern doctrine favoring commercial arbitration stemmed from the Federal Arbitration Act, 9 U.S.C. §§ 1–14. There may no longer be much of a distinction between the two lines of cases (*Roney & Co. v. Kassab,* 981 F.2d 894, 898 (6th Cir.1992); *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.,* 925 F.2d 1136, 1142 n. 5 (9th Cir.1991)), but precision constrains us to avoid treating them interchangeably.

■ Although in commercial disputes to which the Federal Arbitration Act applies, such as the one before us,[2] the "positive assurance" test of *Warrior & Gulf* may not control, a nearly equivalent standard does: "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *see also Mastrobuono v. Shearson Lehman Hutton, Inc.,* —— U.S. ——, ——, 115 S.Ct. 1212, 1218, 131 L.Ed.2d 76 (1995). Setty's interpretation of Article 9(c) is that a dispute cannot be one "involving the Government or the terms of the Prime Contract" unless relief is sought from the government or pursuant to the terms of the prime contract. Setty seeks relief from Finegold, and only Finegold. It alleges no government breach and asserts no rights under the prime contract. If we accepted Setty's reading of Article 9(c), its claims would therefore be arbitrable. Setty's interpretation certainly makes sense in a situation in which the government agrees to pay the prime contractor additional compensation for extra work and the prime contractor then directs the subcontractor to perform the work, which is more than the subcontract contemplated. If the subcontractor seeks extra pay for the extra work, its grievance would be solely with the prime contractor. Although the government re-

---

1. *See, e.g., National R.R. Passenger Corp. v. Boston & Maine Corp.,* 850 F.2d 756, 759–61 (D.C.Cir.1988); *ARW Exploration Corp. v. Aguirre,* 45 F.3d 1455, 1460, 1462 (10th Cir. 1995); *Executone Info. Sys., Inc. v. Davis,* 26 F.3d 1314, 1321 (5th Cir.1994); *S + L + H S.p.A. v. Miller–St. Nazianz, Inc.,* 988 F.2d 1518, 1523 (7th Cir.1993); *PaineWebber Inc. v. Hofmann,* 984 F.2d 1372, 1377 (3d Cir.1993); *Virginia Carolina Tools, Inc. v. International Tool Supply, Inc.,* 984 F.2d 113, 117 (4th Cir.), *cert. denied,* 508 U.S. 960, 113 S.Ct. 2930, 124 L.Ed.2d 681 (1993); *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London),* 923 F.2d 245, 251 (2d Cir.), *cert. dismissed,* 501 U.S. 1267, 112 S.Ct. 17, 115 L.Ed.2d 1094 (1991); *see also First Options of Chicago, Inc. v. Kaplan,* —— U.S. ——, ————, 115 S.Ct. 1920, 1923–24, 131 L.Ed.2d 985 (1995).

2. Because the subcontract is between two private parties, the Contracts Disputes Act of 1978, 41 U.S.C. §§ 601–613, is inapplicable and the Federal Arbitration Act controls. *See S & M Constructors, Inc. v. Foley·Co.,* 959 F.2d 97 (8th Cir.), *cert. denied,* 506 U.S. 863, 113 S.Ct. 184, 121 L.Ed.2d 129 (1992); *see also United States v. Munsey Trust Co.,* 332 U.S. 234, 241, 67 S.Ct. 1599, 1602–03, 91 L.Ed. 2022 (1947); *United States v. Blair,* 321 U.S. 730, 737, 64 S.Ct. 820, 823–24, 88 L.Ed. 1039 (1944); *Merritt v. United States,* 267 U.S. 338, 341, 45 S.Ct. 278, 279, 69 L.Ed. 643 (1925); *American Fidelity Co. v. National City Bank of Evansville,* 266 F.2d 910, 916 (D.C.Cir.1959); S.Rep. No. 1118, 95th Cong., 2d Sess. 16–17 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5235, 5250–51.

quested the work, the dispute would not "involve" the government—the government did not act in violation of the prime contract and it did not do anything exposing it to liability to the subcontractor. We do not decide whether this is what happened here. Our only concern is with arbitrability. Faced with two possible constructions of Article 9, one in favor of arbitration, the other against, the scales tip in favor of Setty's interpretation, which seems to us the more plausible in any event. There is no indication that the parties intended to preclude arbitration of the sort of claims Setty advances and there is every indication that the parties meant to resolve their differences through arbitration. Any doubts on this subject must be settled in favor of arbitrability.

We therefore reverse the judgment of the district court in part and direct it to permit arbitration of all of Setty's claims.

*So ordered.*