United States Court of Appeals United States Court of Appeals
For the First Circuit For the First Circuit


No. 95-2188

PAINEWEBBER INCORPORATED,

Plaintiff, Appellant,

v.

MOHAMAD S. ELAHI, KOKAB MOAREFI ELAHI AND MARYAM ELAHI,

Defendants, Appellees.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge] 



Before

Boudin, Circuit Judge, 
Bownes, Senior Circuit Judge, 
and Stahl, Circuit Judge. 



Steven L. Manchel with whom David A. Forman and Choate, Hall & 
Stewart were on brief for appellant. 
Philip M. Giordano with whom Giordano & Champa, P.A. was on brief 

for appellees.



July 3, 1996


STAHL, Circuit Judge. Mohamad S. Elahi, his wife STAHL, Circuit Judge. 

Kokab Moarefi Elahi, and their daughter Maryam Elahi, former

clients of the investment firm PaineWebber Incorporated

("PaineWebber"), sought arbitration of several claims

stemming from ill-fated investments. PaineWebber filed a

complaint in federal district court seeking to stay

arbitration, alleging that the claims were time-barred under

the terms of the arbitration agreement. The district court

dismissed PaineWebber's complaint and granted the Elahis'

motion to compel arbitration. PaineWebber appeals, and we

affirm.

I. I. 

Background Background 

The Elahis opened investment brokerage accounts

with PaineWebber in 1986 and executed a "Client's Agreement"

providing that:

all controversies which may arise between
[the Elahis and PaineWebber] concerning
any transaction in any account(s) or the
construction, performance or breach of
this or any other agreement between [the
Elahis and PaineWebber] . . . shall be
determined by arbitration. Any
arbitration shall be in accordance with
the rules in effect of either the New
York Stock Exchange, Inc., American Stock
Exchange, Inc., National Association of
Securities Dealers, Inc., or where
appropriate, the Chicago Board Options
Exchange or National Futures Association,
as the [client] may elect.

-2- 2

It also provided that "[t]his agreement and its enforcement

shall be construed and governed by the laws of the State of

New York."

Some time in 1994, the Elahis notified PaineWebber

of their intention to pursue claims that one of its brokers

had sold them unsuitable and highly speculative investments,

falsely guaranteed a twelve-percent minimum return, and

deceptively assured them that their investments were secure

when in fact they had already lost a significant part of

their initial investment. On August 3, 1994, the Elahis and

PaineWebber executed an agreement to toll, as of June 28,

1994, the running of all statutes of limitations and other

defenses based on the passage of time, apparently hoping to

reach a negotiated settlement. The effective date of the

tolling agreement was more than seven years after the Elahis'

last purchase of an investment from PaineWebber. 

On December 29, 1994, the Elahis filed a Statement

of Claim with the National Association of Securities Dealers,

Inc. ("NASD"), seeking arbitration of claims arising under

the federal securities laws, Massachusetts statutes, and

various Massachusetts common law theories of fraud and breach

of fiduciary duty. PaineWebber responded by bringing this

action for declaratory and injunctive relief, seeking to bar

the arbitration of the Elahis' claims. PaineWebber asserted

that the arbitration rules of the NASD precluded claims filed

-3- 3

more than six years after the purchase of the investments at

issue. Specifically, PaineWebber pointed to Section 15 of

the NASD Code of Arbitration Procedure ("section 15"), which

provides:

Time Limitation Upon Submission 
Sec. 15. No dispute, claim, or
controversy shall be eligible for
submission to arbitration under this Code
where six (6) years have elapsed from the
occurrence or event giving rise to the
act or dispute, claim, or controversy.
This section shall not extend applicable
statutes of limitations, nor shall it
apply to any case which is directed to
arbitration by a court of competent
jurisdiction.

PaineWebber postulated that the Elahis' claims were not

"eligible for submission to arbitration" because they

concerned securities purchased more than seven years before

the effective date of the tolling agreement and over eight

years before the claim for arbitration was filed with the

NASD. The Elahis' countered by filing motions (1) to dismiss

PaineWebber's complaint and (2) to compel arbitration under

the Federal Arbitration Act, 9 U.S.C. 4.

The district court granted the Elahis' motions.

The court found that the parties had signed a valid

arbitration agreement covering disputes over investment

transactions, and consequently ruled that the applicability

of the time-bar provision of section 15 was a question to be

-4- 4

determined by the arbitrator rather than the court.1

PaineWebber appeals.

II. II. 

Discussion Discussion 

PaineWebber argues on appeal that the section 15

time bar makes the Elahis' claims ineligible for arbitration,

and that the court, not the arbitrator must therefore decide

the timeliness question. The issue before us, then, is

whether the time-bar provision is to be construed and applied

by the arbitrator or by the court.2 We are the tenth

circuit court to address that question; our sister circuits

are split five-to-four. The Third, Sixth, Seventh, Tenth,

and Eleventh Circuits have held that the court must decide

the applicability of the section 15 time bar; the Second,

Fifth, and Eighth, and Ninth Circuits have held that the

 

1. The district court based its decision on its published
opinion in a similar case, PaineWebber, Inc. v. Landay, 903 
F. Supp. 193 (D. Mass. 1995), which the court incorporated by
reference in its unpublished memorandum and order in this
case.

2. Ultimately, the arbitrator or the court will probably
need to determine (1) whether the only relevant "occurrence
or event" triggering the time bar was the Elahis' purchase of
investments, or whether the time bar should be measured from
the date of alleged subsequent acts or omissions related to
the investments, and (2) whether the time bar is absolute or
subject to equitable tolling. We need not decide those
issues. We are faced solely with the question whether the
district court correctly referred the time bar issues to the
arbitrator, or should have decided them itself.

-5- 5

arbitrator decides.3 In our view, this body of appellate

caselaw leaves important aspects of the problem unaddressed,

as we shall explain. The relevant Supreme Court cases

provide guidance, but do not point clearly to the correct

result in this case. Consequently, we embark on our own

analysis.

Because this appeal presents a question of law,

appellate review is plenary. See McCarthy v. Azure, 22 F.3d 

351, 354 (1st Cir. 1994) (applying de novo review to district 

court's ruling on scope of arbitration agreement); Commercial 

Union Ins. Co. v. Gilbane Bldg. Co., 992 F.2d 386, 388 (1st 

Cir. 1993) (explaining that determination of arbitrability

depends on contract interpretation, which is a question of

law).

PaineWebber presents two basic arguments: (1) that

the parties' contractual choice of New York law was made with

the intent to require the court, not the arbitrator, to apply

the section 15 time bar, as New York caselaw requires; and

(2) that, under federal law, the time bar presents a question

of arbitrability to be decided by the court, in the absence

of clear evidence that the parties intended to submit

arbitrability determinations to arbitration. We address

these arguments in order.

 

3. The cases are listed and discussed infra in part 
II.B.1.a.

-6- 6

A. Effect of the Choice-of-Law Clause 

The agreement between PaineWebber and the Elahis

provides that "[t]his agreement and its enforcement shall be

construed and governed by the laws of the State of New York."

Relying on that choice-of-law provision, PaineWebber argues

that we must reverse the district court's order because New

York courts have held that courts, not arbitrators, must

decide the applicability of the section 15 time bar. See, 

e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ohnuma, 

630 N.Y.S.2d 724, 725 (N.Y. App. Div. 1995); Merrill Lynch, 

Pierce, Fenner & Smith, Inc. v. DeChaine, 600 N.Y.S.2d 459, 

460 (N.Y. App. Div.), leave to appeal denied, 624 N.E. 2d 694 

(1993). 

Thus, our first task is to determine if the choice-

of-law provision settles the question whether the court or

the arbitrator decides the effect of the section 15 time bar.

Somewhat paradoxically, federal arbitration law dictates the

effect of the clause selecting New York law.

Section 2 of the Federal Arbitration Act ("FAA"),4

 

4. Section 2 of the FAA provides in pertinent part that:

A written provision in . . . a contract
evidencing a transaction involving
commerce to settle by arbitration a
controversy thereafter arising out of
such contract or transaction . . . shall
be valid, irrevocable, and enforceable,
save upon such grounds as exist at law or
in equity for the revocation of any
contract.

-7- 7

"is a congressional declaration of a liberal federal policy

favoring arbitration agreements, notwithstanding any state

substantive or procedural policies to the contrary." Moses 

H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 

24 (1983). Although "[t]he FAA contains no express pre-

emptive provision," and "[does not] reflect a congressional

intent to occupy the entire field of arbitration," Volt Info. 

Sciences, Inc. v. Board of Trustees of Leland Stanford, Jr. 

Univ., 489 U.S. 468, 477 (1989), it was intended to "create a 

body of federal substantive law of arbitrability, applicable

to any arbitration agreement within the coverage of the Act."

Moses H. Cone, 460 U.S. at 24. There is no dispute that the 

agreement between these parties is within the scope of the

FAA, because it is clearly one "involving commerce" as that

phrase was broadly construed in Allied-Bruce Terminix Cos. v. 

Dobson, 115 S. Ct. 834, 839-43 (1995). And, the question 

whether a court or an arbitrator applies the section 15 time

bar relates closely to "arbitrability," so we must apply the

federal common law of arbitrability that has developed

pursuant to the FAA. See Moses H. Cone, 460 U.S. at 24. 

The "primary purpose" of the FAA is to ensure "that

private agreements to arbitrate are enforced according to

their terms." Volt, 489 U.S. at 479. "Arbitration under the 

Act is a matter of consent, not coercion, and parties are

 

9 U.S.C. 2.

-8- 8

generally free to structure their agreements as they see

fit." Id. Thus, whether an issue is to be decided by the 

arbitrator is a matter of the parties' contractual intent.

See Mastrobuono v. Shearson Lehman Hutton, Inc., 115 S. Ct. 

1212, 1216 (1995).

The Supreme Court has explained that the FAA "not

only 'declared a national policy favoring arbitration,' but

actually 'withdrew the power of the states to require a

judicial forum for the resolution of claims which the

contracting parties agreed to resolve by arbitration.'" Id. 

at 1215-16 (quoting Southland Corp. v. Keating, 465 U.S. 1, 

10 (1984)). More recently, the Supreme Court explained that

if a state law is applicable to contracts generally, it may

be applied to arbitration agreements, but a state law that is

specifically and solely applicable to arbitration agreements

is displaced by the FAA. Doctor's Assocs., Inc. v. 

Casarotto, 116 S. Ct. 1652, 1655-56 (1996). Therefore, New 

York law cannot require the parties in this case to submit 

the question of the section 15 time bar to a court; the

question is whether the parties intended, through their 

general choice of New York law, to adopt for themselves the

New York caselaw requiring that courts, not arbitrators,

decide the time bar.

Based on the "national policy favoring

arbitration," Mastrobuono, 115 S. Ct. at 1216, the Supreme 

-9- 9

Court in Mastrobuono held that the choice-of-law provision in 

a broker-client agreement did not indicate an intent to adopt

New York caselaw barring arbitrators from awarding punitive

damages. 115 S. Ct. at 1215-18. The Court found that the

parties' choice of New York law was not "an unequivocal

exclusion of punitive damages," id. at 1217, and [a]t most . 

. . introduce[d] an ambiguity into an arbitration agreement

that would otherwise allow punitive damages awards." Id. at 

1218. The Court resolved that ambiguity both "in favor of

arbitration," id., and "against the interest of the party 

that drafted it," id. at 1219, and found that the choice-of- 

law clause did not speak to the power of the arbitrator to

award punitive damages, id. 

Following the principles and analysis set forth

in Mastrobuono, we (like the district court) find that the 

choice-of-law clause in this case is not an expression of

intent to adopt New York caselaw requiring the courts to

apply section 15. Here, the breadth of the arbitration

clause -- encompassing "all controversies . . . concerning

any transaction" as well as the "construction, performance,

or breach" of the agreement -- militates against reading the

choice-of-law clause as a limit on the arbitrator's power.

Moreover, the agreement provides that "arbitration shall be

in accordance with the rules in effect of the . . . [NASD],"

which further undermines the likelihood that the parties

-10- 10

intended to adopt arbitration rules contained in New York

caselaw. In sum, we can do no better than to borrow from

Mastrobuono: 

We think the best way to harmonize the
choice-of-law provision with the
arbitration provision is to read "the
laws of the State of New York" to
encompass substantive principles that New
York courts would apply, but not to
include special rules limiting the
authority of arbitrators. Thus, the
choice-of-law provision covers the rights
and duties of the parties, while the
arbitration clause covers arbitration . .
. .

Id. at 1219. 

Thus, relying on Mastrobuono, we hold that the 

parties' contractual choice of New York law does not require

a judicial determination of the effect of the NASD Code

section 15 time bar.5 We move on to consider the

arbitration clause itself (and the NASD Code of Arbitration

Procedure incorporated therein) to determine, in light of

federal arbitration law, whether the parties intended that

the arbitrator or the court apply the time bar.

B. Interpreting Section 15 

 

5. This conclusion is not inconsistent with Volt Info. 
Sciences, Inc. v. Board of Trustees of Leland Stanford, Jr. 
Univ., 489 U.S. 468 (1995). In Volt, the Supreme Court 
deferred to the California court's finding under state
contract law that the parties had intended their choice-of-
law clause to adopt California rules governing arbitration
procedures. Id. at 476. Here, we must determine de novo 
what the parties intended by their choice-of-law clause, and
we follow Mastrobuono. See Mastrobuono, 115 S. Ct. at 1217 
n.4.

-11- 11

A cardinal principle of federal arbitration law is

that "`arbitration is a matter of contract and a party cannot

be required to submit to arbitration any dispute which he has

not agreed so to submit.'" AT&T Technologies, Inc. v. 

Communications Workers of Am., 475 U.S. 643, 648 (1986) 

(quoting United Steelworkers v. Warrior & Gulf Navig. Co., 

363 U.S. 574, 582 (1960)).6 Where the parties have made

clear what issues are to be arbitrated, and what issues are

excluded from arbitration, it is easy to give effect to that

principle. The difficulty comes where the existence or scope

of the agreement to arbitrate is unclear; in that situation,

 

6. Earlier, one might have doubted whether appellate
decisions concerning labor arbitration would apply to
commercial arbitration. Today, there is little question.
The Supreme Court relied heavily upon a labor arbitration
case in its recent decision in First Options of Chicago, Inc. 
v. Kaplan, 115 S. Ct. 1920, 1923-25 (1995) (applying labor 
arbitration precedents, particularly AT&T, to determine 
whether courts or arbitrators decide arbitrability under a
commercial arbitration agreement). We believe it is
appropriate to follow the Supreme Court's lead in applying
the particular labor arbitration cases cited herein to the
particular issue in this commercial arbitration case. See, 
e.g., McCarthy v. Azure, 22 F.3d 351, 354 (1st Cir. 1994) 
(applying labor arbitration precedents in commercial
arbitration case). Cf. Finegold, Alexander & Assocs., Inc. 
v. Setty & Assocs., Ltd., 81 F.3d 206, 207-08 (D.C. Cir. 
1996) (discussing application of labor arbitration precedents
in commercial arbitration cases, and stating "there may no
longer be much of a distinction between the two lines of
cases . . . but precision constrains us to avoid treating
them interchangeably"); Raytheon Co. v. Automated Bus. Sys., 
Inc., 882 F.2d 6, 10-11 (1st Cir. 1989) (explaining that use 
of labor arbitration precedents is inappropriate in deciding
whether commercial arbitrators have power to award punitive
damages, given different considerations in long-term labor-
management relationships and short-term, often "one-shot"
commercial relationships).

-12- 12

federal arbitration law must provide default rules and

presumptions.

Because a party will not be coerced to arbitrate an

issue unless he has so agreed, the Supreme Court has held

that:

the question of arbitrability -- whether
a[n] . . . agreement creates a duty for
the parties to arbitrate the particular
grievance -- is undeniably a judicial
determination. Unless the parties
clearly and unmistakably provide
otherwise, the question of whether the
parties agreed to arbitrate is to be
decided by the court, not the arbitrator.

Id. at 649, followed in First Options of Chicago, Inc. v. 

Kaplan, 115 S. Ct. 1920, 1923-25 (1995). In this case, if 

the section 15 time bar is determinative of the

"arbitrability" of the Elahis' claim, then, under AT&T and 

First Options, the district court must construe and apply the 

time bar, unless we find "clear and unmistakable" evidence

that the parties agreed to have the arbitrator decide

arbitrability. 

But the presumption established in AT&T and First 

Options -- that courts, not arbitrators, decide 

"arbitrability" unless the parties clearly intend otherwise -

- is an exception to the "liberal federal policy favoring

arbitration." See Moses H. Cone, 460 U.S. at 24. Pursuant 

to that policy, the Supreme Court has established a broad

presumption of arbitrability: "any doubts concerning the

-13- 13

scope of arbitrable issues should be resolved in favor of

arbitration, whether the problem at hand is the construction

of the contract language itself or an allegation of waiver,

delay, or a like defense to arbitrability." Id. at 24-25. 

Accordingly, if the time bar does not control

"arbitrability," the issue of the time bar's applicability

would be one for the arbitrator under the broad arbitration

clause, absent a clear indication to the contrary in the

parties' agreement. See Mastrobuono, 115 S. Ct. at 1218 

("[A]mbiguities as to the scope of the arbitration clause

itself [must be] resolved in favor of arbitration.") (quoting

Volt, 489 U.S. at 476); AT&T, 475 U.S. at 650 (explaining 

established rule that where broad arbitration clause is in

force, presumption of arbitrability exists unless "forceful

evidence" indicates intent to exclude claim from

arbitration). In other words, if an "arbitrability" issue

arises, it is presumptively for the court to decide; but

issues other than "arbitrability" are presumptively

arbitrable, that is, for the arbitrator to decide.

Because the agreement is not unmistakably clear

about whether the court or the arbitrator is to apply the

time bar, this case hinges on which of the two presumptions

we apply: (1) issues of "arbitrability" are presumptively

for the court to decide, or (2) issues other than

"arbitrability" are presumptively for the arbitrator. And,

-14- 14

which presumption we apply hinges on whether the time bar is

an "arbitrability" issue, in the sense that the Supreme Court

used that term in AT&T and First Options. Thus, we venture 

into a definitional maze to determine whether or not the NASD

time bar presents an issue of "arbitrability."

1. Does the time bar present an "arbitrability" 

issue? 

The Supreme Court's most recent discourse on "who

decides arbitrability" appears in First Options, 115 S. Ct. 

at 1923-25. In First Options, the "arbitrability" issue was 

whether Kaplan and his wife were bound to arbitrate their

personal liability for the debts of their wholly owned

investment corporation, given that they had not personally

signed the arbitration agreement that undisputedly bound the

corporation. Thus, we can glean from First Options that the 

issue of whether a person is a party to an arbitration

agreement is an "arbitrability" issue, and presumptively for

the court to decide.

In AT&T, the other Supreme Court case on "who 

decides arbitrability," the "arbitrability" issue was whether

the subject matter of the underlying dispute was expressly 

made non-arbitrable by the terms of the arbitration

agreement. The arbitration clause of the collective

bargaining agreement ("CBA") in AT&T expressly did not cover 

disputes "excluded from arbitration by other provisions of

-15- 15

this contract." AT&T, 475 U.S. at 645. The CBA provided 

further that the employer, AT&T, was free to exercise certain

management functions, including the termination of

employment, "not subject to the provisions of the arbitration

clause." Id. Another CBA term provided that layoffs would 

occur in reverse order of seniority, defining layoffs as

terminations resulting from "lack of work"; the "layoff"

provision did not specify whether it was subject to, or

excepted from, the arbitration clause. Id. The issue was 

whether the union could compel arbitration over certain

layoffs, or, instead, whether the layoffs were non-arbitrable

management functions. The Supreme Court held that the issue

whether "layoffs" were an arbitrable subject matter was to be

decided by the courts, not the arbitrator, given that the

parties had expressly agreed that certain subjects, including

"termination of employment," were not arbitrable. Id. at 

651. Thus, we glean from AT&T that the question whether the 

subject matter of the underlying dispute is within the scope

of an expressly limited arbitration agreement is an

"arbitrability" issue.

In the case at hand, it is without question that

PaineWebber and the Elahis are parties to an arbitration

agreement of broad scope, and that the underlying dispute

over unsuitable investments concerns a subject matter that

they intended to arbitrate. Nonetheless, PaineWebber

-16- 16

contends that the NASD section 15 time bar prevents the

arbitrator from hearing any aspect of this dispute, because

the time bar is a "substantive eligibility requirement." 

The question before us, then, is whether the timeliness of

submission goes to the "arbitrability" of the merits of the

underlying dispute, within the meaning of that term as

suggested by AT&T and First Options. 

The Supreme Court has twice defined

"arbitrability": in AT&T as "whether the . . . agreement 

creates a duty for the parties to arbitrate the particular

grievance," id. at 649; and in First Options as "whether they 

agreed to arbitrate the merits" of the dispute, 115 S. Ct. at

1923. It is not immediately obvious how to apply these

definitions to determine whether the NASD time bar is an

arbitrability issue.

One could say here that "arbitrability" is not an

issue, because the parties clearly agreed to arbitrate the

merits of disputes about investment transactions.

Alternatively, one could say that the parties only agreed to

arbitrate investment disputes less than six years old,7 in

 

7. The parties apparently agree that the NASD Code of
Arbitration Procedure was incorporated by reference into
their agreement, even though it was not known at the time of
execution that the NASD would be the chosen arbitral forum.
Cf. PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1201 (2d Cir. 
1996) (holding that NASD Code not incorporated into identical
client-broker arbitration agreement because NASD not
identifiable as actual arbitral forum at time of execution of
the agreement).

-17- 17

which case the time bar would be an "arbitrability" issue.

But where does that logic take us? Many a mandatory

procedural rule could be called an "arbitrability" rule if

the failure to comply prevented arbitration of the merits.

For example, one might say that, by incorporating the NASD

rules, the parties agreed to arbitrate only those disputes

for which the arbitrator's fee has been paid; questions

relating to the fee could be called "arbitrability" issues.

It would be illogical, though, to conclude that the court,

not the arbitrator, must determine if the proper fee was

paid. Thus, it is not immediately clear how we should

determine, at the margins at least, what is and what is not

an arbitrability issue. Seeking more light on what

"arbitrability" means and whether the section 15 time bar is

an "arbitrability" issue, we next examine the rulings of

other circuits on the question whether courts or arbitrators

apply the section 15 time bar. 

a. Decisions of other circuits 

i. Five circuits conclude the court must 

decide 

Five circuits (the Third, Sixth, Seventh, Tenth,

and Eleventh) have interpreted the time bar of section 15 to

be a substantive eligibility requirement that constitutes a

jurisdictional prerequisite to arbitration, and thus for the

-18- 18

court to apply.8 See, e.g., Cogswell v. Merrill Lynch, 

Pierce, Fenner & Smith, Inc., 78 F.3d 474, 478-81 (10th Cir. 

1996) (collecting and discussing cases from other circuits);

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cohen, 62 F.3d 

381, 383-84 (11th Cir. 1995); PaineWebber Inc. v. Hoffman, 

984 F.2d 1372, 1378 (3d Cir. 1993); Roney and Co. v. Kassab, 

981 F.2d 894, 898-900 (6th Cir. 1992); Edward D. Jones & Co. 

v. Sorrells, 957 F.2d 509, 512-13 (7th Cir. 1992).  

In essence, these decisions rest on an asserted

"plain language" interpretation of section 15: because the

rule provides that claims over six years old are not

"eligible for submission" to arbitration, these circuits 

conclude that it limits the jurisdiction of the arbitrator,

and consequently, any question about the application of the

rule to the facts of a particular case is for the courts.

Having characterized the time bar as an "arbitrability" issue

presumptively for the courts under AT&T and First Options, 

these circuits, examining agreements substantially identical

to the Elahis', find no clear evidence of an intent to

arbitrate the time-bar issue. 

In our view, the language of section 15 is not

plain and unambiguous. Section 15 of the NASD Code does not

 

8. Some of the cited cases involve an identical time-bar
rule of the New York Stock Exchange, and we see no reason to
distinguish the cases. Furthermore, none of the cases turn
on the minor variations in the language of the arbitration
clauses in the broker-client agreements.

-19- 19

speak to who decides the applicability of the time bar. 

Section 15 does not plainly create a question of

"arbitrability," because it does not address whether the

basic subject matter of the dispute is within the scope of

the arbitration clause.

One could credibly view section 15 as analogous to

a statute of limitations rather than a "substantive

eligibility requirement." Courts have often held that

timeliness issues are for the arbitrator to decide, so the

mere fact that the rule creates a time-based bar to

successful assertion of a claim does not by itself create an

"arbitrability" issue for the court. See Moses H. Cone, 460 

U.S. at 24-25 (1983); Local 285, Serv. Employees Int'l Union 

v. Nonotuck Resource Assocs., Inc., 64 F.3d 735, 739-40 (1st 

Cir. 1995); O'Neel v. National Ass'n of Secs. Dealers, Inc., 

667 F.2d 804, 807 (9th Cir. 1982).

The Seventh Circuit's analysis relied in part on a

1988 letter written by an NASD staff attorney stating that

"the NASD will not process a claim that falls wholly outside

the six year period," finding the letter to be an indication

that section 15 is an eligibility requirement that must be

decided by the courts. See PaineWebber Inc. v. Farnam, 870 

F.2d 1286, 1292 (7th Cir. 1989). In our view, reliance on

the NASD staff attorney's letter is misplaced. There is no

assurance that the letter represented the position of the

-20- 20

NASD at the time. More importantly, it does not reflect the

current view of the NASD. Recently, the NASD has concluded

that section 15 is silent on whether courts or arbitrators 

decide if an action is time-barred. The NASD has proposed an

amendment to section 15 which would provide that the NASD

Director of Arbitration would make the eligibility

determination under the six-year time-bar rule. 59 Fed. Reg.

39,373, 39,373-74 (July 26, 1994), quoted in Cogswell, 78 

F.3d at 479.9 The NASD, explaining the amendment's purpose,

stated that "Section 15 does not specify who has the

authority to determine if a claim is eligible for submission

to arbitration." Id. The NASD's 1994 statement seriously 

undermines the five-circuit majority's "plain language"

rationale, as well as any reliance on the staff attorney's

letter as an agency opinion entitled to some deference.

In sum, we are not persuaded by the analysis of the

five-circuit majority.

ii. Four circuits say the arbitrator 

decides 

 

9. The NASD withdrew the proposed amendment in October 1994
based on concerns expressed in public comments, and is
apparently still working "to develop a proposal acceptable to
all parties concerned." Letter from Suzanne E. Rothwell,
NASD Associate General Counsel, to Mark Barracca, Branch
Chief, Division of Market Regulation of the Securities and
Exchange Commission (Oct. 12, 1994). In our view, the
withdrawal of the proposed amendment does not negate the
significance of the NASD's statement in 1994 that section 15
does not specify who decides the applicability of the time
bar. 

-21- 21

Four circuits -- the Second, Fifth, Eighth, and

Ninth -- take the view that the section 15 time bar is a

matter for the arbitrator to decide. While we agree with the

result these circuits reach, in our view, their varied

analyses leave important questions unanswered. 

In Smith Barney Shearson, Inc. v. Boone, 47 F.3d 

750, 753-54 (5th Cir. 1995), the Fifth Circuit drew a

distinction between issues of "substantive arbitrability" and

"procedural arbitrability." Given the broad arbitration

clause between the parties in Boone, the court held that 

section 15 raised timeliness issues that "are issues of

procedural arbitrability and must be decided by the

arbitrator."10 Id. at 754. 

 

10. The Fourth Circuit, which has not decided the question
presented here, appears to embrace the "substance vs.
procedure" approach of the Fifth Circuit. In Miller v. 
Prudential Bache Secs., Inc., 884 F.2d 128, 132 (4th Cir. 
1989), cert. denied, 497 U.S. 1004 (1990), the court found 
that a clause in a broker-client agreement providing that
"arbitration was to be conducted in accordance with the rules
of the arbitration forum governed only arbitration
procedure." The precise holding in Miller, though, was that 
although the NASD's procedural rules made the NASD's anti-
fraud provisions inapplicable, the NASD arbitrator was not
barred from applying the anti-fraud provisions of other stock
exchanges to which Prudential-Bache belonged. That result
followed from the court's finding that the NASD arbitration
rules related only to arbitration "procedure," and not the
"substantive rules that may bear on the merits of the
underlying dispute." Id. It would appear that the Fourth 
Circuit's analytical approach (i.e., that the procedural 
rules of the arbitral forum are incorporated into an
arbitration agreement only to govern arbitration procedure)
would lead to the same result with respect to the NASD time
bar: the NASD Code of Arbitration Procedure, including
section 15, is for the arbitrator to interpret and apply.

-22- 22

The Eighth Circuit held that section 15 was for the

arbitrator to apply, but declined to address whether the NASD

time bar was procedural or substantive. FSC Secs. Corp. v. 

Freel, 14 F.3d 1310, 1312 n.2 (8th Cir. 1994). Instead, the 

court in Freel determined that another provision of the NASD 

Code of Arbitration Procedure, section 35, was a "clear and

unmistakable expression" of the parties' intent to have the

arbitrator decide the applicability of the section 15 time

bar. Id. at 1312-13. Section 35 of the NASD Code of 

Arbitration Procedure provides that "[t]he arbitrators shall

be empowered to interpret and determine the applicability of

all provisions under this Code." Id. at 1312. 

Finally, and most recently, the Second Circuit held

that the arbitrator decides the applicability of the time

bar. In PaineWebber, Inc. v. Bybyk, 81 F.3d. 1193, 1196, 

1198-99 (2d Cir. 1996), the court assumed without analysis

that the section 15 time bar presented an "arbitrability"

question in the sense of AT&T and First Options. But the 

court also found that the broad arbitration agreement ("any

and all controversies which may arise concerning the account"

were to be arbitrated) was clear and unmistakable evidence of

the parties' intent to have the arbitrator determine

arbitrability. Id. at 1199-200. In reaching the conclusion 

that this intent was "clear and unmistakable," the court

said, somewhat paradoxically, that it would construe any

-23- 23

ambiguities against the drafter, PaineWebber. Id. at 1199. 

The Bybyk court went on to say that it did not need to decide 

whether the time bar was substantive or procedural, because

it determined that the NASD rules were not effectively

incorporated into the parties' agreement. Id. at 1201. But, 

the court further stated, even if the NASD rules and the time

bar had been incorporated, Section 35 (discussed above with

the Eighth Circuit's Freel decision) clearly "commit[ted] all 

issues, including issues of arbitrability and timeliness, to

the arbitrators." Id. at 1202. Thus, the Second Circuit 

relied on several alternative grounds to find that the time

bar should be applied by the arbitrator.

The Ninth Circuit has held that "the validity of

time-barred defenses to enforcement of arbitration agreements

should generally be determined by the arbitrator rather than

the court. O'Neel v. National Ass'n of Secs. Dealers, Inc., 

667 F.2d 804, 807 (9th Cir. 1982). But the O'Neel court was 

applying a previous NASD five-year time limit for submission

to arbitration, not the present section 15. Moreover, O'Neel 

contains no analysis of the issue, as the Ninth Circuit

simply adopted an earlier Second Circuit case, Conticommodity 

Services v. Phillip & Lion, 613 F.2d 1222, 1224-26 (2d Cir. 

1980), which has since been supplanted by the Second

Circuit's more recent analysis in Bybyk, 81 F.3d at 1193. 

Nonetheless, it appears that O'Neel is still good law in the 

-24- 24

Ninth Circuit, and we believe the same result would obtain in

that circuit with respect to section 15.

b. Our analysis 

In our view, we must determine whether the parties

intended the time bar to be an "arbitrability" issue, i.e., a 

threshold issue that must be decided by a court before there

can be any arbitration. After all, the intent of the parties

always controls what is to be arbitrated. AT&T, 475 U.S. at 

648. Given the existence here of a valid and broad

arbitration clause covering "all controversies" concerning

investment transactions "or the construction, performance or

breach of this or any other agreement," did the parties

intend that the time bar of section 15 should determine 

"arbitrability" as that term is used in AT&T and First 

Options? 

If the parties clearly intend that a particular

issue must be resolved by the courts before there is any duty

to submit to arbitration, then the courts must respect that

intent by deciding the issue. See AT&T, 475 U.S. at 648. On 

the other hand, if it is ambiguous whether the parties intend

a given issue to be an "arbitrability" issue, we must make a

sensible presumption about their intent.

Thus, if the parties have (1) entered into a valid

arbitration agreement (satisfying First Options 

"arbitrability"), and (2) the arbitration agreement covers

-25- 25

the subject matter of the underlying dispute between them

(satisfying AT&T "arbitrability"), then we will presume that 

the parties have made a commitment to have an arbitrator

decide all the remaining issues necessary to reach a decision

on the merits of the dispute. Put differently, the signing

of a valid agreement to arbitrate the merits of the subject

matter in dispute presumptively pushes the parties across the

"arbitrability" threshold; we will then presume that other

issues relating to the substance of the dispute or the

procedures of arbitration are for the arbitrator. Cf. Moses 

H. Cone, 460 U.S. at 24-25. But, if the parties clearly and 

unmistakably provide that an issue is one of "arbitrability"

-- i.e., that the issue is a threshold matter that must be 

determined before any adjudicative power will be granted to

the arbitrator -- then the court must respect that clear

expression of intent and decide that threshold issue, rather

than compelling arbitration.

This presumption about whether an issue goes to

"arbitrability" is consistent with both the federal policy

favoring arbitration and common sense about the likely intent

of parties who have agreed to arbitrate the subject matter of

the underlying dispute. We believe that parties who have

agreed to arbitrate a given subject most likely intend and

expect that the arbitrator should resolve all issues that

-26- 26

arise concerning that subject; if they do not, we think they

would clearly express their contrary intent.

The presumption that we now adopt (i.e., that 

issues other than (1) the existence of an arbitration

agreement between the parties and (2) whether the subject

matter of the underlying dispute is within the scope of the

arbitration clause are presumptively not "arbitrability"

issues) must not be confused with -- and in no way diminishes

-- the presumption, established in AT&T and First Options, 

that issues of arbitrability are normally to be decided by

courts, not arbitrators. The presumption that we adopt today

is about whether an issue is one of "arbitrability"; the 

AT&T/First Options presumption is about who decides issues 

that have been classified as "arbitrability" issues.

The Court explained in First Options that parties 

are unlikely to have focused on the question of who should

decide arbitrability, and therefore the courts should presume

that they did not intend to submit arbitrability issues to an

arbitrator. 115 S. Ct. at 1924-25. This is obvious where

the "arbitrability" question is whether there is an agreement

at all (as in First Options); certainly a party who did not 

sign the agreement did not consider who should decide

arbitrability. This presumption (that arbitrability issues

are for the courts) also makes sense where the subject matter

of the dispute may be outside the scope of an otherwise valid

-27- 27

agreement (as in AT&T); in such a case, the parties likely 

believed that it was enough to exclude certain issues from

the arbitration clause, and probably did not think about the

arbitrator's power to decide whether a particular close case

was excluded or not.

On the other hand, where the parties have clearly

agreed to arbitrate the subject of the underlying dispute

between them, as the parties have here, it is unlikely that

they intended other issues related to the dispute, such as

the timeliness of the submission of the claim, to affect the

"arbitrability" of the dispute. Such an intent is

particularly unlikely where the arbitration clause is as

broad as it is in this case. Thus, we presume that the

parties here did not intend to make the section 15 time bar a

threshold "arbitrability" question to be determined by the

courts rather than an arbitrator.

-28- 28

2. Did the parties clearly and unmistakably express 

an intent to make the NASD time bar an 

"arbitrability" issue? 

Although we presume that the time bar was not

intended to be an arbitrability issue, we do not stop there;

we must look closely at the agreement between PaineWebber and

the Elahis for any clear and unmistakable expression of an

intent contrary to that presumption. We apply "general

state-law principles of contract interpretation" to an

arbitration agreement, but with "due regard" to the federal

policy favoring arbitration. Volt, 489 U.S. at 475-76; see 

also First Options, 115 S. Ct. at 1924; Mastrobuono, 115 S. 

Ct. at 1219 & n.9. As the parties have directed, we look to

New York contract law. "[T]he court must ascertain the

intent of the parties from the plain meaning of the language

employed," and a "contract should be construed so as to give

full meaning and effect to all its provisions." American 

Express Bank Ltd. v. Uniroyal, Inc., 562 N.Y.S.2d 613, 614 

(N.Y. App. Div. 1990), leave to appeal denied, 569 N.Y.S.2d 

611 (1991). A contract term is ambiguous if it is "capable

of more than one meaning when viewed objectively by a

reasonably intelligent person who has examined the context of

the entire integrated agreement and who is cognizant of the

customs, practices, usages, and terminology as generally

understood in the particular trade or business." Walk-In 

-29- 29

Med. Ctrs., Inc. v. Breuer Capital Corp., 818 F.2d 260, 263 

(2d Cir. 1987) (applying New York law).

Our analysis of the agreement reveals no clear and

unmistakable expression of intent that the NASD time bar

should be an arbitrability issue, nor that the time bar's

applicability should not be arbitrated. The agreement simply

says that "arbitration shall be in accordance with the rules

in effect of . . . [the NASD]."11 PaineWebber's argument

that the time bar is an arbitrability issue centers on the

"eligible for submission" language of section 15 ("No

dispute, claim, or controversy shall be eligible for 

submission to arbitration under this Code where six (6) years 

have elapsed . . . ."). PaineWebber asserts that the

arbitrator is only empowered to act on claims that are

"eligible for submission" to the NASD, thus someone else --

the court -- must decide if a claim is "eligible for

submission."

 

11. The notion of the Elahis having an intent with regard to
section 15 is somewhat artificial -- it seems unlikely that a
small, private investor would have any specific knowledge of
the NASD arbitration rules. But the parties here do not
dispute that the NASD rules were effectively incorporated
into their agreement, nor is there any argument that the
agreement was an unconscionable contract of adhesion. Thus,
by incorporation, the parties have committed to be bound by
section 15, whether or not they even knew it existed, let
alone understood what it meant. See Level Export Corp. v. 
Wolz, Aiken & Co., 111 N.E.2d 218, 221 (N.Y. 1953) (one who 
accepts a contract is deemed to know its contents).

-30- 30

As we concluded earlier in our analysis of whether

the time bar presented an arbitrability issue, PaineWebber's

view is plausible, but it is not the only plausible

interpretation of this phrase. "Submission to arbitration"

could mean submission for full adjudication of the merits,

rather than submission for preliminary determinations, such

as whether the claim is time-barred, or whether the

appropriate fee was paid, or whether the claim was submitted

on the proper forms. The NASD itself recently stated, as we

have noted, that "Section 15 does not specify who has the

authority to determine if a claim is eligible for submission

to arbitration." 59 Fed. Reg. 39,373, 39,373-74, quoted in 

Cogswell, 78 F.3d at 479-80. Thus, we conclude, as did the 

NASD itself, that the "eligible for submission" language in

section 15 is not a clear expression of intent to make

timeliness an arbitrability issue.

A number of other considerations support our

conclusion that section 15 was not clearly intended to be an

arbitrability issue for judicial determination.12 First,

 

12. We choose not to rely on another line of precedent that
would justify our decision. In John Wiley & Sons, Inc. v. 
Livingston, 376 U.S. 543, 555-59 (1964), the Supreme Court 
held that the effect of a four-week time limit for the
submission of grievances was a matter for the arbitrator, not
the court. The CBA in Wiley provided that "[t]he failure by 
either party to file the grievance within this time
limitation shall be construed and be deemed to be an
abandonment of the grievance." Id. at 556 n.11. The 
employer argued that no duty to arbitrate had arisen because
of the union's failure to timely file its grievance. Id. at 

-31- 31

the existence of NASD Code section 35, empowering the

arbitrator to "interpret and determine the applicability of

all provisions under this Code," strongly undercuts any

argument that the parties intended the section 15 time bar to

be an arbitrability issue to be decided only by the courts.

See Bybyk, 81 F.3d at 1202; Freel, 14 F.3d at 1312. 

Second, the section 15 time bar is part of the NASD

Code of Arbitration Procedure, thus one would assume it is

intended to be applied by the NASD itself to control its own

 

556. The Court explained that "[o]nce it is determined, as
we have, that the parties are obligated to submit the matter
of a dispute to arbitration, 'procedural' questions which
grow out of the dispute and bear on its final disposition
should be left to the arbitrator." Id. at 557. 
Recently, we followed Wiley in Local 285, Serv. 
Employees Int'l Union v. Nonotuck Resource Assocs. Inc., 64 
F.3d 735, 739-40 (1st Cir. 1995). The CBA in Nonotuck 
required grievances to be presented within fifteen days of
the occurrence, and provided that "[t]he time limits provided
in this article are conditions precedent for the filing and
processing of grievances under this Article." Id. at 739. 
The employer argued that late-filed grievances were expressly
excluded from arbitration, and that under AT&T, 450 U.S. at 
650, the arbitrability of the grievance was a matter for the
court, not the arbitrator. Nonotuck, 64 F.3d at 739-40. We 
rejected that argument, explaining that the employer
"misapprehend[ed] the distinction between substantive and
procedural arbitrability." Id. We stated that "the fact 
that something is a condition precedent to arbitration does
not make it any less a procedural question" to be determined
by the arbitrator. Id. (internal quotation marks omitted). 
The Wiley and Nonotuck decisions could be neatly 
applied to this appeal, but we think that simply labelling
timeliness issues as "procedural," and thus for the
arbitrator, does not give due regard to the parties'
contractual intent. If the parties expressly intend a
timeliness issue (or other procedural issue) to be an
"arbitrability" issue that the arbitrator cannot decide, then
we must respect that contractual intent. Thus, we think our
analysis better reflects the primacy of the parties' intent.

-32- 32

procedures, rather than a rule that is somehow "off-limits"

for arbitrators to apply.

Third, the NASD rules only come into play after the

NASD has been chosen as the arbitral forum. Although the

other potential forums specified in the parties' arbitration

clause appear to have a nearly identical six-year time bar,

they might, in theory, have very different time-bar rules,

with different time periods, or different language (perhaps

phrased in terms of "eligibility for submission," perhaps

not). If other forums did have differently phrased rules,

the question whether timeliness presented an "arbitrability"

issue would depend on which of the potential arbitral forums

was chosen. If the parties intended to make a time bar a

threshold issue for judicial, rather than arbitral,

determination, it seems unlikely that they would do so

through such potentially unreliable means.

III. III. 

Conclusion Conclusion 

Because the parties agreed to arbitrate "all

controversies" concerning investment transactions, as well as

controversies concerning the construction, performance, and

breach of the arbitration agreement, we presume that they

intended to arbitrate the timeliness of the submission of

this dispute about investments. Finding no clear expression

of an intent contrary to our presumption, we hold that the

-33- 33

interpretation and application of the six-year time bar of

section 15 is a matter for the arbitrator. Accordingly, the

judgment of the district court is affirmed. Costs to affirmed Costs to 

appellees. appellees. 

-34- 34